No. 12279

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

DEE ALEXANDER, WILLIAM ALEXANDER,
and PAUL ALEXANDER,

Plaintiffs and Respondents,

-vs-

NED HARDY and TOWNSEND LUMBER COMPANY,

Defendants and Appellants.

---

Appeal from: District Court of the Fifth Judicial District,
Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

For Appellants:

Keller, Reynolds and Drake, Helena, Montana
Argument submitted on briefs.

For Respondents:

Allen LeMieux, Boulder, Montana
Argument submitted on briefs.

---

Submitted: January 24, 1973

Decided: FEB 6 - 1973

Filed: FEB 6 - 1973

*Thomas J. Kearney*
Clerk

Mr. Justice Haswell delivered the Opinion of the Court.

This appeal is from a judgment of the district court of Jefferson County, sitting without a jury, finding an indebtedness owed to plaintiffs by defendants in the amount of $1,105.87; foreclosure of a logger's lien therefor; and costs and attorney fees. The case involved payments due under a contract for the falling of timber.

Defendant, Ned Hardy, was an independent contractor who had contracted with Townsend Lumber Company to fall, skid and deck the logs. Codefendant, Townsend Lumber Company, purchased the logs from the United States Government. By stipulation Townsend Lumber Company agreed to pay any amount unsatisfied, if plaintiffs recovered judgment against defendant Ned Hardy. In consideration of this agreement plaintiffs agreed to dismiss Townsend Lumber Company from this action. Hereinafter, in speaking of defendant, we refer to Ned Hardy alone.

The facts of the case are: Just prior to February 11, 1971 an oral contract for employment was negotiated between defendant and plaintiffs Dee, Will and Paul Alexander. Plaintiffs were employed by defendant to go upon a tract designated Block #4, approximately six miles outh of Cataract Creek in Jefferson County, Montana, and cut down certain trees for saw logs. Defendant agreed to pay plaintiffs the sum of $5 per thousand board feet for trees cut down by them, payment to be made after trees had been hauled and scaled.

Plaintiffs commenced work for defendant on February 11, 1971. After the first seven or eight days of cutting the contract was modified by providing for bimonthly payments of fifty cents per tree cut as an advance against the pay scale of $5 per thousand board feet, until such time as actual hauling and scaling could take place. Sample scales were to be taken by defendant to provide

a comparison of the advance payment with the scale rate. Defendant paid the advances requested by plaintiffs on February 19 and March 10, 1971.

According to plaintiffs they sawed, limbed and cut 6,570 trees as of March 25, 1971. Evidence of the number of trees cut was from a record kept by plaintiffs on a day by day basis, which was introduced. Thus plaintiffs contend they are entitled (at the rate of fifty cents per tree) to $3,285 less payments of $2,179.13, leaving a balance of $1,105.87 unpaid and due from defendant.

On the other hand, defendant contends that $825 was paid by him to plaintiffs on February 19, 1971. And again on March 10, 1971, $1,050 was paid to plaintiffs. In addition, testimony indicates that 287,276 board feet of lumber was delivered to Townsend Lumber Company from Block #4. This amount was attested to by Gerald Delin, a forester and wood boss for Townsend Lumber Company, whose duty it was to scale logs and keep a record of what was actually delivered to the sawmill. Based on this accounting, Delin indicated to defendant Hardy that he was overestimating the board footage. As it became clear to defendant that the advances were exceeding the $5 per thousand compensation, he denied further advances on March 25, 1971.

Delin also testified that he went out to the cutting area in early summer and again in October after plaintiffs had quit cutting, for the purpose of estimating the board footage left; which had not been delivered. He estimated there were 50,000 board feet of decked logs and another 2,000 board feet of merchantable logs or trees down which had not been decked. His testimony was corroborated by Doyne L. Tank, a timber assistant for the United States Forest Service.

Thus, at the rate of $5 per thousand, defendant owed plaintiffs a total of $1,696.38 for 339,276 board feet. Plaintiffs admitted payment in the amount of $2,179.13. Based on these figures, defendant's advances were exceeding the $5 per thousand compensation.

When defendant refused to make payment on March 25, 1971, plaintiffs filed a logger's lien the following day, pursuant to section 45-407, R.C.M. 1947. On March 29, 1971, this action was filed. Trial was had on November 8, 1971, the court sitting without a jury. Judgment was rendered on February 24, 1972, in favor of plaintiffs in the amount of $1,105.87 based on payment of fifty cents per tree; the logger's lien was ordered foreclosed and sale of the timber was ordered to be made accordingly.

The issue involved in this litigation is what were the terms of the contract between the parties and whether or not defendant completely compensated plaintiffs for their services under that contract.

The district court concluded that defendant had breached the contract by his failure to submit timber for scaling, therefore giving plaintiffs the right to elect the alternative method of payment, i.e. fifty cents per tree, citing Thomas v. Cloyd, 110 Mont. 343, 100 P.2d 938.

This is error. The fifty cents per tree was not an alternative means of compensation but rather an advancement until scaling and board footage was estimated.

Plaintiffs cite 95 ALR2d 504, as authority for liability of an employer for agreed advances which exceed the share of profits or commissions earned. However, the annotation also discloses that the employer's liability depends upon the language of the contract. The result depends on whether the particular contract provisions involved are considered as guaranteeing to the employee a minimum amount represented by the advances to which he is entitled, or whether the amount of the compensation depends entirely on the amount of his commissions, i.e. board footage.

Here, the facts are clear. The parties intended the fifty cents per tree as only an advancement, not a guarantee. The ultimate compensation was to be based on $5 per thousand board feet and not on fifty cents per tree cut.

There is substantial credible evidence in the record by plaintiff Paul Alexander that plaintiffs were to be paid at the rate of $5 per thousand board feet for their labors. In answer to questions by defendant's attorney concerning any change made in the original agreement, Paul Alexander testified:

> "A. Yes, after we had sawed there about a week to a week and a half * * * we could see that he wasn't going to move the timber as fast as we was cutting; therefore, we couldn't get paid right. If we had two or three weeks timber laying on the ground we wouldn't get paid for it unless they were moving it and scaling it, so he come up with the idea in the presence of me, my brother, and my dad that he would pay us as an advance 50¢ per tree. Now that was until they got this timber hauled down to the mill and scaled and we would take either a cut or a gain, depending on how it scaled.
>
> "Q. And did you accept that agreement then? A. We accepted that."
>
> "* * *
>
> "Q. And now you were sawing by the tree for an advance purpose only, isn't that correct? A. That's correct, yes.
>
> "Q. There seems to be a little confusion, and I want to be sure we are in agreement on this. You were to be paid eventually on the proposition based on $5.00 per thousand, is that correct? A. That's correct.
>
> "Q. But on that, you were to receive advances under your testimony at the rate of 50¢ per tree? A. Per tree every two weeks without fail." (Emphasis supplied).

William and Dee Alexander testified that they agreed with the testimony of Paul and that ultimately they were to be paid at the rate of $5 per thousand and the fifty cents per tree was an advance only.

Regardless of when or how the advances were to be made the ultimate compensation was to be $5 per thousand board feet. By applying simple mathematics, it is thus established that the plaintiffs earned $1,725 for the cutting of 345,076 board feet of timber, the highest figure appearing anywhere in the record. To this, we add the $75 cleanup allowance agreed upon by the parties. It is admitted that plaintiffs have been paid $2,179.13. Thus, plaintiffs have been overpaid in the amount of $379.13.

For these reasons, the judgment of the district court is vacated and the cause dismissed.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.